**TRUXEL, Plaintiff-Appellant v GOODMAN, Defendant-Appellee.**

Ohio Appeals, 2nd District, Franklin County.

No. 3484. Decided November 5th, 1942.

R. G. Lloyd, Columbus, for plaintiff-appellant.

Burr, Porter, Stanley & Treffinger, Columbus, for defendant-appellee.

**OPINION**

By BARNES, J.

The above-entitled cause is now being determined as an error proceeding by reason of plaintiff's appeal on questions of law from the judgment of the Court of Common Pleas of Franklin County, Ohio.

On July 8, 1941, plaintiff, Edna Truxel, filed a petition in the Court of Common Pleas of Franklin County. Ohio, alleging that defendant, Dr. Sylvester J. Goodman, performed a Caesarean operation upon her on December 26, 1938. There is no allegation in the petition or amended petition that defendant ever treated the plaintiff following the operation. The petition and amended petition, in substance, allege that the Caesarean operation performed by the defendant was negligently done in that the uterus and adjacent

bowel were sewed and tied together with the same suture, and that by reason of the perforation of the bowel by said sewing and suturing aforesaid, certain seepage of the bowel content into the abdominal cavity and the contiguous tissues took place, causing infection and abscesses therein; further that said suturing caused a fistulous tract within the bowel and uterine cavity to form, through which the bowel content drained and infiltrated into the uterine cavity, creating a cess pool of contamination and infection therein and causing abscesses in said uterine cavity, all causing plaintiff to suffer pain and subjected her to the serious impairment of her health.

On November 3, 1939, she entered a hospital at Pittsburgh, Pennsylvania, for treatment.

On the 17th day of December, 1940, she was operated upon at White Cross Hospital, Columbus, Ohio. That this latter operation disclosed the negligence of defendant in performing the Caesarean operation.

The amended petition contains the allegation that she did not know nor was it known or discovered what was the cause of her condition and illness until the operation upon her at White Cross Hospital on December 17, 1940.

Counsel for defendant filed demurrer to both the original and amended petitions on the ground that the claimed cause of action was barred by the statute of limitations. In both instances the trial court sustained the demurrer and plaintiff not desiring to plead further, the amended petition was dismissed and costs adjudged against the plaintiff.

In due time plaintiff gave notice of appeal on questions of law, thus lodging the case in our court.

Plaintiff's only assignment of error is predicated on the claim that the trial court acted erroneously in sustaining defendant's demurrer to the amended petition and dismissing the action.

Counsel for defendant state an issuable question thus:

"Does the statute of limitation in an action for malpractice begin to run when the relation of physician and patient ceases or does it cease to run when the patient makes discovery of the alleged malpractice of the physician?"

The action was commenced July 8, 1941, and this was more than a year from the time the relation of physician and patient ceased, but within the period of one year after plaintiff alleged she discovered the claimed malpractice.

The pertinent portion of §11225 GC, reads as follows:

"An action for * * * or malpractice * * * shall be brought within one year after the cause thereof accrues."

It seems to us that counsel for plaintiff-appellant conclusively answers his own argument when on page 2 of his brief, he makes the following statement:

"The Ohio decisions hold that the statute begins to run when the surgeon retires from the case, when the relationship of physician and patient terminates."

In this case it would be at the time of the operation at Grant Hospital in December, 1938, for the surgeon had no occasion to see his patient thereafter.

Counsel then follows with the statement that the Ohio Supreme Court has "not been unanimous in its interpretation of this statute of limitations, and in some recent decisions has relented somewhat from the harshness of its original view."

From the Supreme Court cases cited we find the claim to be correct that our court of last resort has wavered over the meaning of this statute, but not on the question presented in the instant case.

The divergence of views by members of our Supreme Court has been solely on the question whether the statute begins to run from the time that the alleged act of malpractice was actually performed, or should begin to run when the relationship of physician and patient terminates. In no instance has the Supreme Court stated that the statute does not begin to run until the patient discovers the alleged act of malpractice. In fact, the reported cases leave no other inference than that the date of the discovery of the alleged malpractice may not be considered the date when the cause of action accrues.

In some jurisdictions outside Ohio the discovery of the alleged malpractice is fixed by statute for the running of the limitation.

The first case to which we are referred is that of **Gillette v Tucker, 67 Oh St 106,** decided in 1902, by a divided court, three to three. Because of the fact that the court was equally divided, the judgment of the Court of Appeals was affirmed. The trial court had directed a verdict in favor of the defendant at the close of plaintiff's testimony, on the ground that the cause of action accrued at the time of the operation, and that suit was not filed until more than one year after that date. The Circuit Court reversed, holding that the statute of limitations did not commence to run until the professional relation of physician and patient had ceased.

In the Supreme Court the three members for affirmance were Price, Burkett and Spear, the first named writing the opinion. The dissenting opinion was written by Davis, J., and concurred in by Shauck and Crew. The pertinent portion of Syllabus 3 reads as follows:

"The statute of limitations does not commence to run against the right to sue and recover on account of such want of skill, care and attention, until the case has been so abandoned, or the professional relationship otherwise terminated."

In 1905 the Supreme Court again had under consideration this statute of limitations in the case of **McArthur v Bowers, 72 Oh St. 656.** In this interim the personnel of the court had changed through Summers, J., succeeding Burkett, C. J. In the memorandum opinion the Supreme Court decision was reversed on the doctrine of the dissenting opinion in **Gillette v Tucker, supra.** This decision was by a divided court, four to two, Summers, J., joining with the other three members who joined in the dissenting opinion in the Gillette case.

In 1919 the question was again before the Supreme Court in the case of **Bowers v Santee, 99 Oh St 361.** The personnel of the Supreme Court had entirely changed at that time and by a divided court, five to one, the case of **Gillette v Tucker, supra,** was approved and followed and that of **McArthur v Bowers, supra,** disapproved. This case, as did the others, involved an action for malpractice. The opinion was by Wanamaker, J., Syllabus 2 reads as follows:

"In an action for a breach of contract in such case, the statute of limitations does not begin to run until the contract relation is terminated."

Again, in 1921, the Supreme Court in a malpractice action in a memo opinion affirmed on authority of **Gillette v Tucker, supra,** and **Bowers v Santee, supra.** Again this opinion was by a divided court, four to three. Wanamaker was one of the three dissenting. This seems strange in view of the fact that he wrote the opinion in the **Bowers v Santee, case, supra,** being one of the cases as authority for the majority opinion.

We are unable to ascertain the reasons for the dissent of Judge Wanamaker.

In **Volume 31 O. Jur., page 473, Section 217,** the writer of the text states that a cause of action for malpractice has been held to accrue at the time of the breach of the duty and not at the time of the resultant injury or the discovery thereof.

This same question has been considered by the Circuit Courts and Courts of Appeal of Ohio, but we do not quote therefrom since the decisions of the Supreme Court have fully covered the question. Neither do we discuss cases cited by counsel for appellant in other jurisdictions, since in any event we must follow the decisions of our own Supreme Court, if the question is fully covered.

We sympathize very fully with the earnestness with which counsel for plaintiff argues the justness of his client's case. He says that he has no quarrel with the Legislature in its enactments, but rather with the construction given to the section by the courts. Certainly counsel would not expect us to reverse the Supreme Court. If any modification of the rule is to be had, it must be done by the Supreme Court and not by our court. We volunteer the suggestion that we think some change in the limitation statute could very properly be made. Of course, this would not assist appellant in the instant case.

We find no prejudicial error in the action of the trial court and therefore the judgment will be affirmed and costs in our court adjudged against the appellant.

GEIGER, PJ., HORNBECK, J., concur.